**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**BENNY L. BLY**                                                                              **PLAINTIFF**

v.                  **CASE NO. 4:06CV01590 SWW/BD**

**MICHAEL J. ASTRUE,**
**Commissioner, Social**
**Security Administration**                                                   **DEFENDANT**

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**I.    PROCEDURE FOR FILING OBJECTIONS**

This recommended disposition has been submitted to United States District Judge Susan Webber Wright. Any party may file specific objections to these findings and recommendations. An objecting party must provide the factual or legal basis for each objection. The objections must be filed with the Clerk no later than eleven (11) days from the date the findings and recommendations are received. A copy must be served on the opposing party. Even in the absence of objections, the District Judge may reject these proposed findings and recommendations, in whole or in part.

**II.    DISCUSSION**

    A.    <u>Procedural History and Standard of Review</u>

Plaintiff, Benny L. Bly, has appealed the final decision of the Commissioner of the Social Security Administration to deny his claim for Disability Insurance benefits. Both parties have submitted appeal briefs and the case is ready for decision.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g). Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. The Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Plaintiff alleged a limitation in his ability to work because of arthritis, a bad back, and a heart problem. (Tr. 133) The Commissioner found that Plaintiff was not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act is supported by substantial record evidence.

After conducting an administrative hearing, the Administrative Law Judge[1] (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social

---

[1] The Hon. Jimmy D. Puett.

Security Act at any time through September 30, 2001, his date last insured.[2] (Tr. 24-25) On September 21, 2006, the Appeals Council received and considered additional evidence and then denied Plaintiff's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-7) Plaintiff then filed his complaint initiating this appeal. (Docket #2)

After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

B.   Background

Plaintiff was 57 years old at the time of the second hearing,[3] and thus 49 as of his alleged onset date and 54 as of his date last insured. (Tr. 89, 564, 593) He is a high school graduate. (Tr. 137, 147, 520, 564) He had past relevant work as a poultry and cattle farmer, a welder consultant/supervisor and as a welder. (Tr. 16, 150-54, 592-93)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2004). If the claimant is engaged in substantial gainful activity, benefits are denied, regardless of medical condition, age, education or work experience. *Id.* at § 404.1520(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. *Id.* at

---

[2]In order to receive Disability Insurance benefits, an applicant must establish that he was disabled before the expiration of his insured status. 42 U.S.C. §§ 416(i), 423(c) (1991); *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998); *Battles v. Sullivan*, 902 F.2d 657, 659 (8th Cir. 1990).

[3]There had been an earlier hearing in September of 2003. (Tr. 513-59) The Appeals Council vacated an adverse decision out of that hearing and remanded the claim. (Tr. 73-75)

§ 404.1520(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id.* at § 404.1520(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment. *Id.*, § 404.1520(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. *Id.*

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made. *Id.*, § 404.1520(a)(4). This residual functional capacity assessment is utilized at Steps 4 and 5. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. *Id.*, § 404.1520(a)(4)(iv). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id.*

    C.    <u>Decision of the ALJ</u>

The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 24) He found that Plaintiff had "severe" impairments, but that he did not have an impairment or combination of impairments that met or equaled a Listing. *Id.* He judged that Plaintiff's allegations regarding his limitations during the relevant period (from his alleged onset through the date last insured) were not totally credible. *Id.*

The ALJ found that Plaintiff retained the residual functional capacity for light work through his date last insured. (Tr. 23) He found that Plaintiff's past relevant work as a welding consultant did not require the performance of work-related activities precluded by his limitations, and that his impairments did not prevent his performing that past relevant work. (Tr. 24) Consequently, the ALJ concluded that Plaintiff was not disabled. *Id.*

D.   Analysis of Plaintiff's Claims

Plaintiff argues that the ALJ failed to properly develop the record. (App. Br. 38-42) The ALJ has a duty to fully and fairly develop the record, even in cases where the claimant is represented by counsel. *E.g.*, *Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990). In this case, there was substantial evidence in the record upon which the ALJ could make an informed decision. There were hundreds of pages of treatment records covering a multi-year period of time from both his general practitioner and specialists. There were results of medical tests and procedures. There were disability reports and Disability Supplemental Interview Outlines completed by the Plaintiff. There were reports from reviewing physicians. There were transcripts of two hearings at which Plaintiff was questioned by his experienced attorney and two different Administrative Law Judges. The ALJ is permitted to issue a decision without obtaining additional evidence as long as the record is sufficient to make an informed decision. *E.g., Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Absent unfairness or prejudice, which Plaintiff has not demonstrated, remand is not appropriate. *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995); *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

Next, Plaintiff contends that the ALJ failed to consider evidence which fairly detracted from his findings. (Br. 42-45) He argues that the ALJ failed to consider his obesity. (Br. 42-43) He points to no medical evidence that his obesity imposed any limitations on his ability to work, however. Although Plaintiff's doctors noted that he was obese and urged him to lose weight, no physician indicated that Plaintiff's obesity limited his ability to work. (Tr. 194-95, 265) He was seen for follow-up after his August, 1999, surgery:

> Mr. Bly is a cattle and poultry farmer who has a history of left anterior descending diagonal intervention by Dr. Murphy back on August 20. He admits for follow-up of his coronary atherosclerosis. He has just completed an

> office visit with Dr. De Bruyn with regard to his tachypalpitations follow-up and near syncope, and Dr. De Bruyn has added Atenolol.  Mr. Bly denies any chest discomfort and has not used any nitroglycerin.  He is not short of breath disproportionate to his level of activity and stays very active with his cattle and poultry farming.  He says that he would know in a second if he was having troubles like what he had before Dr. Murphy worked on his artery.  He is feeling fine and is most anxious to get of the hospital.  . . .   He does not really use any dietary discretion.  He says that he will eat fatty foods and fried foods as he wants.  Again he is a cattle and poultry farmer and feels he gets enough aerobic exercise from those activities.  He is not a diabetic.

(Tr. 194)

On his application, Plaintiff alleged that he was limited in his ability to work by arthritis, a bad back and heart problems.  (Tr. 133)  Significantly, Plaintiff did not claim disability based on his obesity in his application for benefits or at the administrative hearings.  *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995).

More importantly, there is no evidence in the record that Plaintiff's obesity imposed any limitations on his ability to work.  *Id.;* see also *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004)(although treating doctors noted claimant was obese and should lose weight, none suggested obesity imposed additional work-related limitations, and claimant did not testify that obesity imposed additional restrictions).  Plaintiff's obesity was a longstanding condition, and he was capable of performing similar and greater exertional work despite his weight.  *See Box*, 52 F.3d at 171 (claimant had 16 year work history despite weight).

Plaintiff also contends that the ALJ erred in failing to include fatigue or episodes of syncope, edema, shortness of breath, tachycardia and chest pain.  (Br. 43)  He includes a lengthy citation to the record in support of this argument.  *Id.*  All of the citations, however, refer to records before or immediately after his August, 1999 procedure.  This lends credence to the ALJ's determination that the surgical procedure and medications resolved Plaintiff's problems, at least during that period of time during which he was still insured for the purposes of Disability Insurance benefits.  Plaintiff argues that the medical evidence

6

continued to show these problems into 2005. *Id.* While that may be so, his date last insured was September 30, 2001, and the presence of those problems after that date is of little relevance under the circumstances. The Court was able to locate only one reference to chest pain and shortness of breath after the surgery but before the date last insured, in May of 2000. (Tr. 261) The hypothetical question posed to the vocational expert was proper. Substantial evidence supported the inclusion of certain impairments and the exclusion of others. See *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993)(hypothetical may omit evidence not substantially supported by record as a whole); *Rappoport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991)(hypothetical question need only include impairments accepted by ALJ as true).

Plaintiff also argues that the ALJ erred in failing to find that he met or equaled a Listing. (Br. 45-47) Plaintiff contends that his heart ailments met Listings 4.02A and B.3.a, 4.04C and 4.05. (Br. 46) Listing 4.02 read as follows:[4]

> 4.02 *Chronic heart failure* while on a regimen of prescribed treatment (see 4.00A if there is no regimen of prescribed treatment). With one of the following:
>
> A. Documented cardiac enlargement by appropriate imaging techniques (e.g., a cardiothoracic ratio of greater than 0.50 on a PA chest x-ray with good inspiratory effort or left ventricular diastolic diameter of greater than 5.5 cm on two-dimensional echocardiography), resulting in inability to carry on any physical activity, and with symptoms of inadequate cardiac output, pulmonary congestion, systemic congestion, or anginal syndrome at rest (e.g., recurrent or persistent fatigue, dyspnea, orthopnea, anginal discomfort);
>
> OR
>
> B. Documented cardiac enlargement by appropriate imaging techniques (see 4.02A) or ventricular dysfunction manifested by S3, abnormal wall motion, or left ventricular ejection fraction of 30 percent or less by appropriate imaging techniques; and

---

[4] In his Brief, Plaintiff quotes the revised cardiovascular Listings. (Br. 46) These were not effective until April 13, 2006. 71 Fed. Reg. 2312 (Jan. 13, 2006). Therefore, the previous Listings were in effect at the time that Plaintiff was last insured and at the time of the ALJ's decision.

> 1. Inability to perform on an exercise test at a workload equivalent to 5 METs or less due to symptoms of chronic heart failure, or, in rare instances, a need to stop exercise testing at less than this level of work because of:
>     a. Three or more consecutive ventricular premature beats or three or more multiform beats; or
>     b. Failure to increase systolic blood pressure by 10 mmHg, or decrease in systolic pressure below the usual resting level (see 4.00C2b); or
>     c. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion; and
> 2. Resulting in marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest;
>
> OR
>     C. Cor pulmonale fulfilling the criteria in 4.02A or B.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2004).

Plaintiff does not meet Listing 4.02. There is no evidence of cardiac enlargement or the degree of physical limitation required. Neither is there evidence of enlargement of the right ventricle caused by lung disease.[5]

Listing 4.04C read as follows:

> C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation), and an evaluating program physician, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise testing would present a significant risk to the individual, with both 1 and 2:
> 1. Angiographic evidence revealing:
>     a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
>     b. 70 percent or more narrowing of another nonbypassed coronary artery; or
>     c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
>     d. 50 percent or more narrowing of at least 2 nonbypassed coronary arteries; or
>     e. Total obstruction of a bypass graft vessel; and

---

[5]Chronic cor pulmonale is characterized by hypertrophy of the right ventricle resulting from disease of the lungs. PDR Medical Dictionary 408 (2d ed. 2000).

> 2. Resulting in marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though the individual is comfortable at rest.

20 C.F.R. Pt. 404, Subpt. P, App. 1 Listing 4.04 (2004).

Plaintiff did not meet this portion of the Listing. There was no evidence that any physician concluded that performance of exercise testing would present a significant risk to Plaintiff and there was no evidence of marked or serious limitation of physical activity.

Listing 4.05 read as follows:

> 4.05 *Recurrent arrhythmias,* not related to reversible causes such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled repeated episodes of cardiac syncope or near syncope and arrhythmia despite prescribed treatment (see 4.00A if there is no prescribed treatment), documented by resting or ambulatory (Holter) electrocardiography coincident with the occurrence of syncope or near syncope.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2004).

Bruce E. Murphy, M.D., Ph.D., Plaintiff's treating cardiologist, noted the results of an event monitor. (Tr. 199) He noted no significant arrhythmia during the period of recording. *Id.* Plaintiff does not meet this Listing. It deserves mention that the Court has also compared the current Listings to Plaintiff's medical records. He does not meet the current Listings, either.

Next, Plaintiff contends that the ALJ did not apply the proper legal standard in evaluating his credibility. (Br. 47-51) The ALJ considered Plaintiff's subjective complaints in light of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).[6] (Tr. 19-22)

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and

---

[6] The ALJ also cited Social Security Ruling 96-7p. (Tr. 19) That Ruling tracks *Polaski* and 20 C.F.R. § 404.1529(c)(3) and elaborates on them.

9

>observations by third parties and treating and examining physicians relating to such matters as:
>
>>1. the claimant's daily activities;
>>
>>2. the duration, frequency and intensity of the pain;
>>
>>3. precipitating and aggravating factors;
>>
>>4. dosage, effectiveness and side effects of medication;
>>
>>5. functional restrictions.
>
>The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original).

There is little objective support in the record for Plaintiff's claim of disability. No evaluations showed medical conditions that were disabling. Furthermore, inconsistencies between the medical evidence and Plaintiff's subjective complaints gave reason to discount those complaints. *Richmond v. Shalala*, 23 F.3d 1141, 1443 (8th Cir. 1994).

Given the inconsistencies in Plaintiff's statements, the lack of medical evidence in support of Plaintiff's allegations, Plaintiff's daily activities, his functional capabilities and the lack of greater restriction placed on Plaintiff by his physicians, the ALJ could rightly discount Plaintiff's subjective complaints. See, *e.g., Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (ALJ may discount subjective complaints if there are inconsistencies in the record as a whole); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (ALJ may discount complaints inconsistent with the evidence as a whole); *Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996) (after full consideration of all evidence relating to subjective complaints, ALJ may discount complaints if there are inconsistencies in evidence as a whole).

Perhaps the most dramatic inconsistency is the level of Plaintiff's activity as disclosed by his medical records as compared with his testimony. He alleged an onset of disability August 31, 1997. (Tr. 89, 571) In October of 1998, he complained of left shoulder pain. (Tr. 289) The doctor observed:

> He, however, has been building a fence and driving fence posts. . . . Denies any right shoulder complaints or other joint complaints in particular at this time. . . . He denies any chest pain, shortness of breath, edema. He does have a history of hypertensive heart disease and states his blood pressure seems to be doing well at home and he is not having any restrictions in his farm at work with his current medications.

(Tr. 289)

In November, 1998, he complained of shoulder pain again. (Tr. 287) "He has a farm and stays busy working. He can not really take off and rest the arm for any significant length of time." *Id.* On February 5, 1999, Plaintiff denied any myalgia, arthralgia, shortness of breath, chest pain, palpitations, edema or medication problems; "[h]e is an active farmer." (Tr. 283) In March of 1999, Plaintiff complained of a sore shoulder after carrying pipe and working in a corral. (Tr. 280-81) In August of 1999, Dr. Murphy noted that Plaintiff was "active on his farm." (Tr. 206) In November of 1999, he denied any myalgia, arthralgia, chest pain or palpitations; no edema was observed; he had been in the deer woods. (Tr. 267) That same month, Dr. Murphy's registered nurse practitioner observed:

> Mr. Bly denies any chest discomfort and has not used any nitroglycerin. He is not short of breath disproportionate to his level of activity and stays very active with his cattle and poultry farming. He says that he would know in a second if he was having troubles like what he had before Dr. Murphy worked on his artery. He is feeling fine and is most anxious to get of the hospital. . . . He does not really use any dietary discretion. He says that he will eat fatty foods and fried foods as he wants. Again he is a cattle and poultry farmer and feels he gets enough aerobic exercise from those activities. He is not a diabetic.

(Tr. 194)

In January of 2000, he denied chest pain, palpitations, edema or angina. (Tr. 266) In February of 2000, Plaintiff denied chest pain, palpitations, edema or problems with medications; "he remains active on his farm with no complaints today." (Tr. 265) In March of 2000, he complained of low back pain after having helped move a pool table a few feet. (Tr. 234) In April of 2000, he complained of arm pain after using a Bobcat. (Tr. 233) On September 8, 2001, he complained of muscle pain after having unloaded 50 pound sacks of feed the day before. (Tr. 232) His date last insured was September 30, 2001. (Tr. 24, 563, 572) On October 9, 2001, he complained of muscle pain after unloading wood. (Tr. 258) Later that month, he complained of generalized arthritis. (Tr. 257) On December 12, 2001, he complained of sore muscles after having driven a tractor the day before and "looking back all day." (Tr. 231)

Plaintiff engaged in extensive daily activities through and even after his date last insured, which is inconsistent with the level of pain and limitation alleged. See *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007)(plaintiff cared for eleven year old daughter, drove her to school, drove elsewhere, fixed simple meals, did housework, shopped for groceries and had no trouble handling money); *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)(plaintiff performed household chores, mowed the lawn, raked leaves, shopped for groceries and drove a car); *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004)(plaintiff attended college classes and church, shopped for groceries, ran errands, cooked, drove, walked for exercise and visited friends and relatives); *Haley v. Massanari*, 258 F.3d 742, 48 (8th Cir. 2001)(plaintiff took care of personal needs, washed dishes, changed sheets, vacuumed, washed cars, shopped, cooked, paid bills, drove, attended church, watched television, listened to radio, read and visited friends and relatives); *Gray v. Apfel*, 192 F.3d 799, 804 (8th Cir. 1999)(plaintiff cared for himself, did household chores, drove short distance, performed other miscellaneous activities); *Haggard v. Apfel*, 175 F.3d 591, 594

(8th Cir. 1999)(plaintiff cooked some meals, watered flowers around house, helped wife paint, watched television, went out for dinner, occasionally drove and occasionally visited with friends); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997)(plaintiff dressed and bathed herself, did some housework, cooking and shopping); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1995)(daily caring for one child, driving when unable to find ride and sometimes going to grocery); *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1995) (visiting neighbors, cooking own meals, doing own laundry and attending church); *Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995)(carrying out garbage, carrying grocery bags, driving wife to and from work inconsistent with extreme, disabling pain); *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995)(plaintiff cooked breakfast, "sometimes" needed help with household cleaning and other chores, visited friends and relatives and attended church twice a month); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)(plaintiff lived alone, drove, shopped for groceries and did housework with some help from neighbor).

The ALJ's credibility analysis was proper. He made express credibility findings and gave multiple valid reasons for discrediting Plaintiff's subjective complaints. *E.g., Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996); *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996); *Hall v. Chater*, 62 F.3d 220, 224 (8th Cir. 1995). His credibility findings are entitled to deference as long as they are supported by good reasons and substantial evidence. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). If an ALJ discredits a claimant's credibility and gives a good reason for doing so, a court will defer to the ALJ's judgment even if every *Polaski* factor is not discussed in depth. *Dunahoo v. Apfel*, 241 F.3d at 1038.

Next, Plaintiff argues that the ALJ did not give proper weight to the treating physician's opinion. (Br. 51-54)On March 11, 2003 (one and one-half years after Plaintiff's date last insured), John Westwood, M.D., his treating physician, completed a Physical Residual Functional Capacity Questionnaire. (Tr. 313-18) Dr. Westwood's restrictions on

13

Plaintiff's activities were quite significant, indicating, for example, that Plaintiff could walk only one-half block, rarely lift less than ten pounds and sit no more than 20 minutes at a time; he was incapable of even a "low stress" job. *Id.* The following month, Dr. Westwood completed a Cardiac Residual Functional Capacity Questionnaire. (Tr. 320-26) It limited Plaintiff's activities in similar ways. In November of 2004, Dr. Westwood wrote a to-whom-it-may-concern letter on behalf of Plaintiff. (Tr. 483) He offered his opinion that cardiac problems had severely limited Plaintiff's activities of daily living since 1999. *Id.* The ALJ noted Dr. Westwood's opinions,[7] but found that they were inconsistent with the medical evidence, including his own reports, specifically inconsistent with Plaintiff's ability to actively farm. (Tr. 21-22) That is a recognized basis for discounting a doctor's opinion. See *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002)(treating physician's opinion not entitled to substantial weight unless well supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with other substantial evidence). On the two Questionnaires, the doctor indicated that Plaintiff could rarely lift less than ten pounds and never lift ten pounds. (Tr. 316, 324) In contrast, Plaintiff testified that doctors at one time had restricted him to lifting no more than 20 pounds, and that he was currently under orders to lift no more than 25 pounds. (Tr. 585) See *Besler v. Sullivan*, 963 F.2d 176, 178 (8th Cir. 1992)(doctor's report discounted because it was inconsistent with claimant's testimony). In August of 1999, after his second cardiac procedure, Dr. Murphy instructed him to exercise. "I have asked him to get some sort of aerobic exercise 20-30 minutes a day. He is active on his farm but does not participate in any aerobic activities." (Tr. 206) That is some medical evidence of Plaintiff's residual functional capacity. See *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (record must include some medical

---

[7]He also noted the opinion of Rus Pearson, D.C., Plaintiff's chiropractor. (Tr. 22)

evidence to support ALJ's residual functional capacity finding). Under the circumstances, the ALJ gave proper weight to the opinion of Plaintiff's treating physician.

Next, Plaintiff alleges that the ALJ did not utilize the proper standard in arriving at his residual functional capacity. (Br. 54-57) The ALJ must determine the claimant's residual functional capacity based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Plaintiff's argument seeks to place the burden of proof on the Commissioner. It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's residual functional capacity. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Masterson v. Barnhart*, 383 F.3d 731, 737 (8th Cir. 2004); *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). A fair reading of the ALJ's decision supports a conclusion that he properly considered all the evidence in reaching his decision of Plaintiff's residual functional capacity.

Finally, Plaintiff urges that the ALJ did not make explicit enough findings concerning his past relevant work. (Br. 57-58) There is no absolute requirement that the ALJ make findings based on the actual functional demands of a past relevant job; instead, the findings may be based on the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Evans v. Shalala*, 21 F.3d 832, 833-34 (8th Cir. 1994); *Kirby v. Sullivan*, 923 F.2d 1323, 1326 (8th Cir. 1991); *Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990) (rejecting only past relevant job analysis). The

latter may be determined by the Dictionary of Occupational Titles. *Evans* at 834; *Kirby* at 1327.

Plaintiff supplied details about his past work in his application. (Tr. 134-35) He supplied more details when he completed a Work History Report. (Tr. 150-54) He testified about his past work at his first hearing (Tr. 521-26, 527, 534) and his second hearing (Tr. 564-71). He testified specifically about his work as a welding consultant. (Tr. 568-70) He testified that the consulting work was mostly mental. (Tr. 570) At the second hearing, the ALJ asked the vocational expert if he needed any more information about any of the work that Plaintiff had performed. (Tr. 571) The vocational expert indicated that he did not need any more information. *Id.* The vocational expert identified the welder consultant/supervisor job as light and skilled. (Tr. 593) Under the circumstances, the ALJ delved sufficiently into the requirements of Plaintiff's past relevant work.

Plaintiff, of course, has the burden of proving his disability. *Sykes v. Bowen*, 854 F.2d 284, 285 (8th Cir. 1988). That includes a showing that Plaintiff's impairments prevented him from performing past relevant work. *Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990). Plaintiff did not meet his burden.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ. See, *e.g.*, *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

### III.   CONCLUSION

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the]

conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; see also *Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

For these reasons, the Court hereby recommends that the District Court affirm the final determination of the Commissioner and dismiss Plaintiff's complaint with prejudice.

DATED this 4th day of January, 2008.

_____
UNITED STATES MAGISTRATE JUDGE